IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANTHONY A. TOCCI,                 :

     Plaintiff,                    :

                                     Case No. 3:07cv314

        vs.                        :

                                     JUDGE WALTER HERBERT RICE

ANTIOCH UNIVERSITY, *et al.,*       :

     Defendants.                :

---

DECISION AND ENTRY OVERRULING, IN PART, AND SUSTAINING, IN PART, DEFENDANTS' MOTION FOR ORDER REQUIRING PLAINTIFF TO CEASE AND DESIST AND FOR EXPEDITED HEARING (DOC. #25) AND DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT (DOC. #32); ORDER DIRECTING PLAINTIFF TO HAVE NO FURTHER DIRECT COMMUNICATIONS WITH DEFENDANTS UNTIL LITIGATION IS CONCLUDED, SAVE AND EXCEPT THROUGH DEFENDANTS' ATTORNEYS

---

The Plaintiff, Anthony A. Tocci, began pursuing a Master of Arts in Conflict Resolution at The McGregor School of Antioch University (the Defendants, referred to collectively as "Antioch" or the "University"), in 1996. Tocci's pursuit of that degree was beset by many obstacles, including numerous conflicts with Antioch regarding his financial obligations and Antioch's failure to provide him with a thesis mentor for approximately nine months. On February 21, 2001, Antioch informed Tocci that it had removed him from its academic program due to non-payment of his account. Further, Tocci was not awarded his Master of Arts degree, given that he had not completed his thesis, which was the last prerequisite for the same.

Tocci has brought suit against Antioch alleging breach of contract and negligence. Doc. #2.  The Defendants previously moved for summary judgment on both claims. Docs. #19, #24.  The Court sustained the Motion, as it pertained to the negligence claim, but overruled it, as it pertained to the breach of contract claim.  Given that the Defendants had apparently misconstrued one part of the Plaintiff's breach of contract claim (that Antioch breached a contract with him by thwarting his ability to attain his degree, by assessing and billing him for a number of improper charges, and by delaying in providing a faculty thesis advisor) and, thus, said claim had not been properly briefed by the parties, the Court granted the Defendants leave to file a renewed Motion for Summary Judgment. Doc. #30. Along with the claim alleging that Antioch breached a contract with him by thwarting his ability to attain his degree, by assessing and billing him for a number of improper charges, and by delaying in providing a faculty thesis advisor, the Plaintiff also plead that the Defendants breached a contract with him by failing to award him a certain number of academic credits that he had earned and by refusing to submit the present dispute to mediation.[1] Doc. #2; Doc. #26.

---

[1]The Complaint can be read to allege that the Defendants breached a contract between the parties in the following ways:  (1) by preventing the Plaintiff from completing his academic requirements, by "fail[ing] to perform and take necessary and appropriate actions in the course of Plaintiff's pursuit of his degree"; (2) by constantly mishandling and mismanaging financial issues; (3) by failing to provide a thesis mentor; (4) by miscalculating Plaintiff's earned academic credits; (5) by refusing to permit Plaintiff to pursue and complete his thesis and thereby satisfy the academic requirements for the award of a Master's degree; and (6) by refusing to submit to mediation. Doc. #2 ¶¶ 14-19.  It is the Court's understanding

2

The Defendants have now filed a Renewed Motion for Summary Judgment, with regard to that part of the breach of contract claim that pertains to the University thwarting Tocci's ability to attain his degree, assessing and billing him for a number of improper charges, and delaying in providing a faculty thesis advisor. Doc. #32.  Tocci responded by filing a two-page memorandum with no citations to legal authority or the record, but which incorporates his response to the Defendants' original Motion for Summary Judgment (which also contains no citations to legal authority, but does contain citations to the record). Doc. #33 (citing Doc. #26).

The Defendants have also filed a Motion for an Order Requiring Plaintiff to Cease and Desist all Direct Communications with Defendants and a Motion for Expedited Hearing. Doc. #25.  The memorandum supporting said combined Motion alleges that the Plaintiff continues to contact the University directly, by telephone and by mail, despite being cautioned against such conduct by his counsel.

The Court will proceed by setting forth the applicable facts and will then summarize the standard that guides its decisions on motions for summary judgment.  It will then proceed to analyze the merits of the Renewed Motion for

―――――――――――――

that allegations (1), (2), (3) and (5) all pertain to the central issue of whether the Defendants breached a contract with Tocci by thwarting his ability to attain his degree, by assessing and billing him for a number of improper charges and by delaying in providing a faculty thesis advisor.  Allegations (4) and (6) appear to be free-standing, however, and the Defendants have not moved for summary judgment on the same. See Docs. #19, #24, #32.

3

Summary Judgment and the Motion for an Order Requiring Plaintiff to Cease and

Desist all Direct Communications with Defendants and Motion for Expedited

Hearing.


I.      Facts[2]

In 1996, Tocci applied for and was accepted into Antioch's Master of Arts in

Conflict Resolution program. Doc. #2 ¶ 7. One of the requirements to obtain the

sought after degree is the completion of a thesis. Doc. #29 at 14 (Tocci Dep. at

51). By December 1999, Tocci had completed all requirements for his Master's

degree except his thesis. Id. at 35 (Tocci Dep. at 136). Antioch required Tocci to

have two advisors for this project, one of his choosing and one assigned by the

University. Id. at 32 (Tocci Dep. at 124). His thesis proposal had been approved

by the professor he selected by December 1999, but the professor originally

_____

[2]Since this case comes before the Court on the Defendants' Renewed
Motion for Summary Judgment, the Court sets forth the facts and circumstances
giving rise to it in the manner most favorable to the Plaintiff, the party against
whom the motion is directed. Servo Kinetics, Inc. v. Tokyo Precision Instruments,
475 F.3d 783 (6th Cir. 2007).

The parties also allude frequently to the fact that, at some point in time early
in his graduate studies, Tocci refused to pay a portion of his tuition and fees, as a
result of a misunderstanding on his part regarding the extent of the same. Doc.
#32-2 (Judgment Entry, City of Xenia Small Claims Ct.). He ultimately brought
suit against the University, in small claims court, and the University counterclaimed
seeking payment of the outstanding amount. Id. On February 23, 1999, the small
claims court ruled in favor of the University. Id. Tocci then paid the amount due
and continued with his educational program. Doc. #32-1 at 9 (Tocci Dep. at 74).
Given that these facts do not play a role in the present dispute, the Court has not
included them in the factual summary set forth above.

assigned by the University had recently left its employ and there was a gap in time of approximately nine months before the University assigned Tocci another advisor. Id. at 20, 33, 35 (Tocci Dep. at 77, 128, 136). Sometime prior to August 28, 2000, Antioch appointed Tocci's new advisor, Professor Abu-Nimer. Doc. #29-3 (Email from Abu-Nimer to Tocci, dtd. Aug. 28, 2000). At an unspecified time, Tocci met with Abu-Nimer and showed him his thesis proposal, however he never completed the thesis. Doc. #29 at 18, 32 (Tocci Dep. at 66, 123-24).

As to communication between Abu-Nimer and Tocci, Antioch points to an email between one of its employees and Tocci, dated August 29, 2000, which states, "I am not sure why you have not contacted [Abu-Nimer] more often." Doc. #29-3 (Email from Paget to Tocci, dtd. Aug. 29, 2000). When questioned at his deposition about whether he responded to the email author about why he did not contact Abu-Nimer more often, Tocci stated that he "told her that we are having this problem with my fee." Doc. #29 at 33 (Tocci Dep. at 126-27).

As to the fee in question, as he was awaiting the appointment of the new faculty advisor and after the University appointed the new advisor, the University continued to bill Tocci. Tocci refused to pay, claiming that he should not have been billed for the time period in which he was doing nothing except awaiting the

assignment of his new advisor. Id. at 33, 35 (Tocci Dep. at 126-27; 137).[3]

Despite Tocci's efforts to convince the University that he should not have been

billed for this time period, the University contacted him and informed him that if he

did not remit the outstanding balance on his account it would terminate his

enrollment. Id. at 34-35 (Tocci Dep. at 131-34); Doc. #29-3 at 13 (Ltr. from

Antioch to Tocci, dtd. Aug. 21, 2000). On February 21, 2001, the University

informed Tocci that his enrollment was terminated due to non-payment of his

account. Doc. #29-3 at 14 (Ltr. from Antioch to Tocci, dtd. Feb. 21, 2001).

Eventually, Antioch conceded that it had made a mistake in the billing and

released Tocci from the payment of all outstanding charges. Doc. #29 at 36 (Tocci

Dep. at 140-41). By letter dated April 2, 2005 (Approximately four years after he

had been expelled), Tocci petitioned the University for the award of a Master's

---

[3]The evidence on the record indicates that students were allowed to petition the University for a reduced fee while working on their thesis, but it is unclear when Tocci could have applied for the reduced fee. An email from the University, dated August 29, 2000, states that if Tocci would petition for the reduced fee, the University would "reverse your tuition once we approve your petition . . . retroactively, and you have arranged to pay the fees for the last three quarters". Doc. #29-3 at 12. It is not clear to the Court whether the disputed fees were the fees from the "last three quarters" that he would have still been obligated to pay had he applied for the reduced fee, the tuition that would have been retroactively reversed had he applied for the reduced fee, or both. Tocci's deposition indicates that a student can apply for a special "maintenance fee" of $275 per quarter (which is presumably the reduced fee in question) while working on a thesis, but he apparently did not apply for the same, for unexplained reasons. Doc. #29 at 28 (Tocci Dep. at 106-08); see also id. at 33 (Tocci Dep. at 128) (indicating that the University billed him full rates for the time he awaited the appointment of his professor and then offered to let him pay the $275 rate).

degree, given that he had accumulated more credits in the program than mandated by the degree requirements and the financial dispute was resolved. Doc. #29-3 at 15 (Ltr. from Antioch to Tocci, dtd. Apr. 15, 2005).  At some point in time, he also offered to submit a project that he thought would conform to the thesis requirement. Doc. #29 at 37 (Tocci Dep. at 142).  Antioch denied the request, given that Tocci never completed the thesis requirement and, further, because the University had a requirement that students had to complete their degree requirements within five years of commencing their graduate level studies (apparently meaning that it was too late for Tocci to complete his thesis, at that time). Id. at 37 (Tocci Dep. at 142-43); Doc. #29-3 at 15 (Ltr. from Antioch to Tocci, dtd. Apr. 15, 2005).

II.    Standards Governing Motions for Summary Judgment

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).  The moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991).

7

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986).  Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." Mich. Prot. & Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be

8

resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th

Cir. 1992) (citation omitted). In determining whether a genuine issue of material

fact exists, a court must assume as true the evidence of the nonmoving party and

draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255.

If the parties present conflicting evidence, a court may not decide which evidence

to believe, by determining which parties' affiants are more credible; rather,

credibility determinations must be left to the fact-finder. 10A Wright, Miller &

Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

  In ruling on a motion for summary judgment (in other words, in determining

whether there is a genuine issue of material fact), "[a] district court is not . . .

obligated to wade through and search the entire record for some specific facts that

might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889

F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S.

Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v.

Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506

U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift

through the record in search of evidence to support a party's opposition to

summary judgment . . . ."). Thus, a court is entitled to rely, in determining

whether a genuine issue of material fact exists on a particular issue, only upon

those portions of the verified pleadings, depositions, answers to interrogatories and

admissions on file, together with any affidavits submitted, specifically called to its

9

attention by the parties.

III.    Analysis

A.    Ohio Breach of Contract Law

In Ohio, the elements of a breach of contract claim include "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." State v. Netherland, 2008 Ohio App. LEXIS 5874, **18-19, 2008 Ohio 7007 (Ohio 4th App. Dist. Dec. 23, 2008) (citation omitted).  Ohio courts recognize that the essential elements of a contract "include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." Minster Farmers Coop. Exch. Co. v. Meyer, 117 Ohio St. 3d 459, 464, 884 N.E.2d 1056 (2008) (quoting Kostelnik v. Helper, 96 Ohio St.3d 1, 3-4, 770 N.E.2d 58 (2002)).  Further, "[a] meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." Kostelnik, 96 Ohio St. 3d at 3-4 (citation omitted).

Specifically with regard to breach of contract claims involving students at universities, Ohio courts have determined that "when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature." Leiby v. Univ. of Akron, 2006 Ohio App. LEXIS 2649, **9-10, 2006 Ohio 2831

(Ohio 10th App. Dist. June 6, 2006) (quoting <u>Bleicher v. Univ. of Cincinnati</u>
<u>College of Med.</u>, 78 Ohio App.3d 302, 308, 604 N.E.2d 783 (Ohio 10th App. Dist.
1992)).  Further, "[t]he terms of the contractual relationship are found in the
university catalog and handbook supplied to students." <u>Id.</u> at *10 (citing <u>Embrey v.</u>
<u>Central State University</u>, 1991 Ohio App. LEXIS 4886 (Ohio 10th App. Dist.
Oct. 8, 1991)).  As further explained by the Ohio Tenth Appellate District, "[i]n
addressing the issue of whether such contract has been breached, the trier of fact
appropriately looks to the terms of the contract as found in the college guidelines
supplied to students." <u>Bleicher</u>, 78 Ohio App. 3d at 308 (citing <u>Embrey</u>, 1991 Ohio
App. LEXIS 4886, and citing and quoting <u>Ottery v. Bland</u>, 42 Ohio App.3d 85, 87,
536 N.E.2d 651 (Ohio 10th App. Dist. 1987)).


      B.    <u>Parties' Arguments</u>

     In general, the University argues that the Plaintiff did not complete all of the
prerequisites of his degree requirement (i.e., the thesis) and did not pay all of the
costs associated with the same and, thus, is not entitled to receive his degree.
Doc. #32 at 3-5.  The University also points to Ohio case law, which holds that
academic decisions, such as the provision of oversight for a thesis project, are
generally left to the discretion of the school, and also holding that graduate
students have much autonomy and are required to take a certain amount of
responsibility when facing the usual, surmountable obstacles that present

11

themselves, in the pursuit of graduate degrees. Id. at 6-12 (citing Armstrong v. Wright State Univ., 103 Ohio Misc. 2d 24, 724 N.E.2d 881 (Ohio Ct. Cl. 1999); Smith v. Ohio State Univ., 53 Ohio Misc. 2d 11, 557 N.E.2d 857 (Ohio Ct. Cl. 1990)). Further, the Defendants note an unpublished case involving the adequacy of educational services provided by a university, wherein the Sixth Circuit opined that "[c]ourts are not inclined to review educational malpractice claims or breach of contract claims based on inadequate educational services." Hutchings v. Vanderbilt Univ., 2003 U.S. App. LEXIS 1512, **5-6 (6th Cir. 2003) (citing Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 226, 88 L. Ed. 2d 523, 106 S. Ct. 507 (1985); Ross v. Creighton Univ., 957 F.2d 410, 414 (7th Cir. 1992)).

From a factual perspective, the Defendants argue that the Plaintiff had two professors available to him to assist him in the preparation of his thesis, so the absence of the school appointed professor for some period of time should not have hindered his preparation of the same. Doc. #34 at 2. They also argue that he could have worked on his thesis in the months after the University assigned Abu-Nimer, but instead chose to spend his time protesting the amount of money he owed the University. Id. at 3. They further assert that Tocci should have applied for a reduced rate while working toward his thesis, but did not. Id. at 3-4. The Defendants summarize their argument as follows:

> If a contract was breached, that breach was by Plaintiff, who refused to both complete the course requirement of a thesis, and pay money owed to Antioch. By so refusing, Plaintiff created his own

12

> "hardships" and rendered the contractual relationship impossible. Although Plaintiff claims he was unable to work on his thesis due to a "gap" in an assigned thesis professor, the record clearly establishes that Antioch had a framework established so that each student had two thesis professors - and despite any gap in the oversight of one professor, the availability of the other was constant. Any obstacle Plaintiff faced for the completion of his thesis did not present him with an insurmountable burden. Plaintiff simply chose not to complete the thesis; and therefore, was not entitled to receipt of the degree he sought.

Id. at 5 (citing Smith v. Ohio State Univ., 53 Ohio Misc. 2d 11, 557 N.E.2d 857 (Ohio Ct. Cl. 1990)).

In contrast, the Plaintiff argues that the University wrongfully billed him, while he was awaiting the appointment of a thesis mentor and then wrongfully expelled him from its academic program because he did not pay the erroneous bill. Doc. #26 at 3; Doc. #33 at 1. The Plaintiff also asserts that the University has not produced any evidence to show that the charges at issue were just; indeed, the University later dropped the charges. Doc. #26 at 4. The Plaintiff also asserts that he could not proceed with the preparation of his thesis, without a University assigned professor.[4] Id.; Doc. #33 at 2.

C.    Application of Law to Facts

The breach of contract allegations presently before the Court can be broken

---

[4]In his memorandum, the Plaintiff states that Abu-Nimer "was not readily available to him and was actually located in Virginia many miles from campus and Plaintiff's residence in New Jersey," however he provides no evidentiary support for this assertion. Doc. #33 at 2.

down into three separate, but related parts, to wit: (1) whether Antioch breached a contract with Tocci by wrongfully billing him for the nine month period when he received no services from the University and then severing his academic relationship with the University as a result of his not paying the bill; (2) whether Antioch breached a contract with Tocci by delaying in providing him a faculty thesis advisor for nine months; and (3) whether Antioch breached a contract with Tocci by preventing him from completing his academic requirements.

       1.    <u>Whether Antioch Breached Contract by Wrongfully Billing for Period when Plaintiff Received No Services and then Severing Academic Relationship as Result of Unpaid Bill</u>

As noted in Section II above, the moving party in a summary judgment action

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). In the present case, the University has not carried its burden, on this first issue.

The Plaintiff claims that Antioch breached a contract with him by (among other things) wrongfully billing him for a nine month period wherein he received no services from the University and then severing his academic relationship with the University as a result of the unpaid bill. The University does not address this

14

contention directly.  Although it correctly notes that courts have held that

academic decisions are generally left to the discretion of a university, unless they

are arbitrary and capricious, e.g., Armstrong v. Wright State Univ., 103 Ohio Misc.

2d 24, 724 N.E.2d 881 (Ohio Ct. Cl. 1999), and that courts do not generally

review breach of contract claims based on inadequate educational services,

Hutchings v. Vanderbilt Univ., 2003 U.S. App. LEXIS 1512, **5-6 (6th Cir. 2003)

(citing Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 226, 88 L. Ed. 2d 523,

106 S. Ct. 507 (1985); Ross v. Creighton Univ., 957 F.2d 410, 414 (7th Cir.

1992)), the University does not cite any legal authority nor identify any portion of

the record that it believes demonstrates the absence of a genuine issue of material

fact, as to whether it wrongfully billed Tocci for the period when he was awaiting

the assignment of a University professor to assist in the preparation of his thesis.[5]

Further, the Plaintiff testifies that the University eventually conceded that it had

made a mistake in the subject billing.  Thus, the Court concludes that the

University is not entitled to summary judgment on this part of Tocci's breach of

contract claim.

―――――――――――――

[5]Although the same would seem to be instrumental to the Court's resolution of this question, neither party points to a university catalog, handbook or billing policy that outlines Antioch's billing practices in instances such as those presented by the facts of this case. See Leiby v. Univ. of Akron, 2006 Ohio App. LEXIS 2649, *10, 2006 Ohio 2831 (Ohio 10th App. Dist. June 6, 2006); Embrey v. Central State University, 1991 Ohio App. LEXIS 4886 (Ohio 10th App. Dist. Oct. 8, 1991).  Further, the Court finds the argument pertaining to the Plaintiff not applying for a lower billing rate to be of no consequence, given the Plaintiff's testimony that the University eventually conceded that it had billed him in error.

15

2.      Whether Antioch Breached Contract by Delaying in Providing
        Faculty Thesis Advisor

The Court next turns to the Plaintiff's contention that Antioch breached a

contract with him by delaying in providing him a faculty thesis advisor for nine

months.  Antioch's argument, in response, is that Tocci could have completed his

thesis with the assistance of only his hand picked professor or, once the University

professor was assigned, with the assistance of both professors.  However, this

argument is more pertinent to the third question (whether Antioch breached a

contract with Tocci by preventing him from completing his academic

requirements), rather than to the question of whether Antioch breached a contract

by not providing Tocci a thesis advisor for nine months.

As to the question presently before it, the Court returns to the University's

above noted legal arguments pertaining to the judicial deference given to

universities in providing educational services and in making academic decisions.

Unlike the billing question addressed immediately above, the Court agrees with

Antioch that the question of whether the University required a graduate student to

have one or two faculty thesis mentors pertains to the provision of educational

services.  As argued by the University, courts generally give deference to

universities in such matters. Doherty v. Southern College of Optometry, 862 F.2d

570, 576 (6th Cir. 1988) ("Before we examine plaintiff's contractual theories

under state law, we note that this case arises in an academic context where

16

judicial intervention in any form should be undertaken only with the greatest

reluctance.") (citing <u>Regents of Univ. of Michigan v. Ewing</u>, 474 U.S. 214, 226,

88 L. Ed. 2d 523, 106 S. Ct. 507 (1985).  As noted by one Ohio Appellate Court,

> It is well-established that great deference is accorded a university
> when making decisions that pertain to the academic performance of
> students and their entitlement to promotion or graduation.  Thus, a
> reviewing court is not to disturb a genuinely academic decision unless
> "it is such a substantial departure from accepted academic norms as
> to demonstrate that the person or committee responsible did not
> actually exercise professional judgment."

<u>Pham v. Case W. Reserve Univ.</u>, 1997 Ohio App. LEXIS 1307, *7 (Ohio 8th App.

Dist. Apr. 3, 1997) (quoting <u>Regents</u>, 474 U.S. at 225, and citing <u>Board of

Curators, Univ. of Mo. v. Horowitz</u>, 435 U.S. 78, 96, 55 L. Ed. 2d 124, 98 S. Ct.

948 (1978); <u>Ohio Civ. Rights Comm. v. Case W. Res. Univ.</u>, 76 Ohio St. 3d 168,

179, 666 N.E.2d 1376 (1996); <u>Frabotta v. Meridia Huron Hosp. School of Nursing</u>,

102 Ohio App. 3d 653, 658, 657 N.E.2d 816 (1995)).  Thus, this Court is to give

deference to an academic decision such as whether graduate students are entitled

to the services of one or two thesis mentors, unless such is a "substantial

departure from accepted academic norms as to demonstrate that the person or

committee responsible did not actually exercise professional judgment." <u>Id.</u>

In the present case, Tocci alleges that it was a matter of University policy

for each graduate student to have two professors, one selected by the student and

17

one appointed by the University, to assist in the preparation of a thesis.[6]  Tocci

argues that the University breached the contract between the parties by not

supplying the University professor for some nine months.  The University argues

that Tocci should have worked on his thesis with the other professor during the

time period in question.

If, as Tocci suggests, it was University policy that each graduate student

was required to work with two professors in the preparation of the required thesis,

then the failure to provide one of those professors might well have been a

substantial departure from accepted academic norms so as to demonstrate that the

University did not actually exercise professional judgment.  The Court cannot

concur with Antioch's position that Tocci should simply have proceeded with one

of the two professors, not having any information as to the expected roles of each

of the two professors.[7]  The Court further notes that Tocci, like other graduate

students, had limited time within which to complete his thesis, given that he had a

_____

[6]Once again, although the same would seem to be instrumental to the
Court's resolution of this question, neither party points to a university catalog,
handbook or policy that outlines Antioch's policy with regard to the provision of
thesis mentors for graduate students. See Leiby v. Univ. of Akron, 2006 Ohio App.
LEXIS 2649, *10, 2006 Ohio 2831 (Ohio 10th App. Dist. June 6, 2006); Embrey
v. Central State University, 1991 Ohio App. LEXIS 4886 (Ohio 10th App. Dist.
Oct. 8, 1991).

[7]For example, there would be a sharp contrast between the University
mandating that students take certain steps with each of the professors (e.g.,
obtain each professors' approval at various stages of the thesis preparation) and
merely making two professors availably for optional assistance to the students.

18

five year window to complete all of his degree requirements. Thus, assuming the necessity of having two professors available for the thesis project, a nine month delay might well have been crucial to the timely completion of the degree requirements. Therefore, there is a genuine issue of material fact as to whether Antioch breached a contract with Tocci in not supplying him with a thesis advisor for nine months.

        3.    <u>Whether Antioch Breached Contract by Preventing Plaintiff from Completing Academic Requirements</u>

The Court now turns to the question of whether Antioch breached a contract with Tocci by preventing him from completing his academic requirements. As noted above, the only academic requirement Tocci did not complete prior to being expelled was the thesis requirement. Antioch argues that Tocci could have worked on his thesis with the assistance of only his self-selected professor, during the nine month span when he did not have a University professor, and also argues that he could have worked on his thesis during the six month span (between August 2000 when the University appointed Abu-Nimer and February 2001 when it expelled him for not paying his bill), at a time when he had two professors available to him. As to the nine month span, Tocci's argument is outlined above, while the only thing he asserts, as to the six month span, is that he was disputing his bill during this time period (which the Court determines is not relevant to the question of why he

19

did not also work on his thesis). <u>See</u> Doc. #33 at 2.

With regard to the argument pertaining to the time period in which Tocci did not have two professors, the previous discussion is also pertinent to the present issue. For if Antioch breached a contract by not providing Tocci with a mandated thesis mentor for nine months, it arguably could be found to have also breached a contract by preventing Tocci from completing his thesis during this same time period. That does not end the present inquiry, though, because Tocci had six additional months within which the University asserts he could have completed his thesis. Because Tocci presents no pertinent argument and points to no facts to create a genuine issue of material fact, on this point, the University's contentions are well taken.

In sum, therefore, in reading the facts in the light most favorable to the Plaintiff, as the Court must do at this stage of the litigation, there exists a genuine issue of material fact as to whether the University breached a contract with Tocci by wrongfully billing him for the nine month period when he received no services from the University and then severing his academic relationship with the University as a result of his not paying the bill, and also by delaying in providing him a faculty thesis advisor for nine months. Therefore, the Defendants' Renewed Motion for Summary Judgment (Doc. #32) is OVERRULED, as to these issues. In contrast, there exists <u>no</u> genuine issue of material fact as to whether Antioch breached a

20

contract with Tocci by preventing him from completing his academic requirements. Thus, the Defendants' Renewed Motion for Summary Judgment (Doc. #32) is SUSTAINED, as to this issue.

IV.   Motion for Order Requiring Plaintiff to Cease and Desist all Direct Communications with Defendants and Motion for Expedited Hearing

The Defendants have also filed a Motion for an Order Requiring Plaintiff to Cease and Desist all Direct Communications with Defendants and a Motion for Expedited Hearing, wherein they assert that the Plaintiff continues to attempt to contact the University directly, both by telephone and by mail. Doc. #25.  Defense counsel has repeatedly contacted Plaintiff's counsel, asking for assistance in this matter, yet Plaintiff refuses to cease the conduct. Id.  The Plaintiff does not respond to the Motion.

The Plaintiff is hereby ordered to have no further direct communications with the Defendants, either by telephone, mail, email or any other means of communication, until this litigation is concluded, save and except through the Defendants' attorneys.  A violation of this Order may be punished as a contempt of Court.

As to the request for expedited hearing, this matter is set for trial on July 12, 2010.  Given the proximity of that date, there is no need to expedite the proceedings any further.

21

Therefore, the Defendants' Motion for an Order Requiring Plaintiff to Cease and Desist all Direct Communications with Defendants and Motion for Expedited Hearing (Doc. #25), is SUSTAINED, as it applies to the request for an Order Requiring Plaintiff to Cease and Desist all Direct Communications, and is OVERRULED, as it applies to the request for expedited hearing.

V.    Conclusion

The Defendants' Renewed Motion for Summary Judgment (Doc. #32) is OVERRULED, with regard to the issues of whether Antioch breached a contract with Tocci by wrongfully billing him for the nine month period when he received no services from the University and then severing his academic relationship with the University as a result of his not paying the bill, and also whether Antioch breached a contract with Tocci by delaying in providing him a faculty thesis advisor for nine months.

The Defendants' Renewed Motion for Summary Judgment (Doc. #32) is SUSTAINED, with regard to the issue of whether Antioch breached a contract with Tocci by preventing him from completing his academic requirements.

Remaining in this litigation, then, are the following components of the Plaintiff's breach of contract claim:

- Whether Antioch breached a contract with Tocci by wrongfully billing him for the nine month period when he received no services from the University and then severing his academic relationship with the

22

University as a result of his not paying the bill;

●      Whether Antioch breached a contract with Tocci by delaying in
       providing him a faculty thesis advisor for nine months;

●      Whether Antioch breached a contract with Tocci by failing to award
       him a certain number of academic credits that he had earned; and

●      Whether Antioch breached a contract with Tocci by refusing to submit
       the present dispute to mediation.


The Defendants' Motion for an Order Requiring Plaintiff to Cease and Desist

all Direct Communications with Defendants and Motion for Expedited Hearing (Doc.

#25), is SUSTAINED, as it applies to the request for an Order Requiring Plaintiff to

Cease and Desist all Direct Communications, and is OVERRULED, as it applies to

the request for expedited hearing.  Further, the Plaintiff is hereby ordered to have

no further direct communications with the Defendants, either by telephone, mail,

email or any other means of communication, until this litigation is concluded, save

and except through Defendants' attorneys.


July 9, 2010



       /s/ Walter Herbert Rice
       WALTER HERBERT RICE, JUDGE
       UNITED STATES DISTRICT COURT


Copies to:
Counsel of record